Sam **LATHEM**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17021.

United States Court of Appeals
Fifth Circuit.

Sept. 22, 1958.

Herbert S. Phillips, Tampa, Fla., Charlie Luckie, Jr., and George C. Dayton, Dade City, Fla., for appellant.

Richard Kelly, Asst. U. S. Atty., Tampa, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Appellant, Sam Lathem, a druggist, was tried and convicted on three counts for sales of morphine sulphate in violation of the Narcotic Drug Act, 26 U.S.C. A. § 4705(a). He was sentenced to two years imprisonment on each of the first two counts, these sentences to run concurrently with a sentence to five years imprisonment on the third count. Appellant raises questions in regard to entrapment, probation, his arrest, his confession, the court's charges, and other matters. Appellant's arguments are without merit. We affirm the judgment.

## I.

Sam Lathem is a registered pharmacist. He was in the drug business for thirty years at various places in Florida

(Orlando, Ocala, and Eustis), before buying a drug store in 1948 at Dade City, Florida. He had never been arrested before the arrest leading to his conviction in this case.

George Allen, paregoric and morphine addict, informer and special employee of the Florida State Narcotics Bureau, gave information to the Florida Bureau and to the Federal Bureau of Narcotics that Lathem was making illegal sales of narcotics at the Cash Drug Store. Agent Lawrence Slotnik of the Federal Bureau, Sergeant Ralph Rand of the Jacksonville Police, and Clyde Tyner of the Florida Bureau conducted the investigation. Slotnik formulated the plans for the purchases, furnished the federal funds that were needed, and witnessed Allen, Rand, and Tyner transacting most of the negotiations and purchases of the morphine.

April 25, 1956, Allen, Slotnik, Rand, and Tyner went to Dade City. Allen and Rand entered Lathem's drug store. They walked up to Lathem and said that Rand wanted "a hundred dollars worth of hard stuff" (morphine). Rand pulled out ten ten-dollar bills and gave them to Lathem, who told him to come back in ten minutes. Lathem walked in the back with the money. Ten minutes later, when Rand returned, Lathem said that the "hard stuff" was in the lavatory on the wash bowl. Rand picked up the hard stuff (50 tablets of morphine sulphate), then bought a large bottle of paregoric from Lathem for $15. Paregoric may be sold legally only one ounce at a time, without a prescription.

May 2, 1956 Rand and Allen purchased 51 morphine tablets from Lathem, again for $100. Lathem told Rand: "You know I was supposed to sell you a quart of paregoric when you were here before and I let you have only a pint and I am going to give you this to show that I am honest about it." He then gave Rand a pint of paregoric.

May 10 Rand went to the drugstore and asked for "twenty dollars worth of morphine". Lathem said that he had sold out, but that he would get some and

let Rand or his nephew have it if he were sent a note reading: "This is O.K. Ralph K."

July 28, 1956, Tyner (with Slotnik) handed such a note to Lathem. He was told to return in several days. He returned August 1, with the same note and paid Lathem $100 for a bottle containing 50 morphine tablets.

Rand and Tyner testified that they had no conversation and no dealings with Lathem except to ask to make the purchases and to hand over cash of $100 for each purchase. 100 one-quarter grain morphine tablets such as those purchased by the agents cost a druggist about $1.86.

Slotnik arrested Lathem about three in the afternoon of August 1, 1956, shortly after the sale to Tyner. Lathem was advised of his constitutional right not to make any statement and that any statement would be used against him. Slotnik and Tyner completed an inventory of the narcotics in the Cash Drug Store. It showed a shortage of 130 morphine sulphate tablets. Lathem was then removed to Tampa, Florida, about forty miles from Dade City. The United States Commissioner was summoned immediately. While waiting for the Commissioner to arrive, Lathem gave a confession, after having been admonished again that any statement must be voluntary and would be used against him. The Commissioner arraigned Lathem and advised him that he was entitled to counsel. The Commissioner also advised him of his constitutional rights. From the moment he was arrested the defendant cooperated with the agents. He stated that he did not want an attorney, he had done wrong, and would plead guilty. He signed a written confession. The Commissioner released the defendant on $1,000 bond. The time was then six o'clock, only three hours after his arrest. That is the government's case.

The defendant contends that the confession was procured by intimidation and threats that he would be kept in jail all night if he did not confess. He testified that Slotnik refused to let him call his

attorney in Dade City. He denies most of the statements attributed to him by the government witnesses.

## II.

Appellant argues that he was entitled to a directed verdict on the ground of entrapment.

In Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, the Supreme Court recently reaffirmed the doctrine of entrapment set forth in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. This Court recently applied the doctrine in Accardi v. United States, 1958, 5 Cir., 257 F.2d 168.

■ The controlling question in entrapment is whether an unwary innocent, having no disposition to commit a crime, is trapped into an offense that is the product of the creative activity of the government's own agents. Sorrells and Sherman hold that this is a question for the jury, unless the evidence is so clear that the Court should decide it as a matter of law.

■ What Sorrells calls the defendant's "predisposition" is evidenced here by Lathem's readiness to sell "the hard stuff". The government agents used no persuasion, no enticements. Lathem showed no qualms, no reluctance. His character and intentions are also shown by his willingness to sell illegally other narcotics. He sold Allen six ounces of paregoric. He gave Rand a pint of paregoric, after he had discovered that he had made a mistake in the quantity; he did not want to miss the sale by refunding the money. This case, therefore, is much stronger than Sherman, from the government's standpoint. In Sherman an important element was the fact that the defendant made no profit and was not actuated by any profit motive; he was not in the narcotics business. Lathem made the tidy gross profit of $98.14 on $1.86 of morphine. On the evidence, it would be reasonable for a jury to conclude that Lathem was an unwary trafficker in the business of selling narcotics who jumped at the opportunity of making sales.

It is unnecessary to discuss further the question of entrapment. The trial judge's instructions on entrapment were fair and correct, the conduct of the government agents was within civilized limits of police action, and the evidence was ample for the jury to decide the issue.

## III.

■ Appellant asked the district court to consider probation in imposing sentence on the third count of the indictment. The district court, on the contrary, held that the Federal Narcotic Control Act of 1956, 26 U.S.C.A. § 7237, et seq., excluded probation or parole for first time narcotics offenders. Appellant argues that the trial judge's construction of the statute is erroneous; in the alternative, that the statute is unconstitutional.

Subsection (d) of Section 7237 reads as follows:

"(d) No Suspension of Sentence; No Probation; Etc.—Upon conviction—

"(1) of any offense the penalty for which is provided in subsection (b) of this section, subsection (c), (h), or (i) of section 2 of the Narcotic Drugs Import and Export Act, as amended, or such Act of July 11, 1941, as amended, or

"(2) of any offense the penalty for which is provided in subsection (a) of this section, if it is the offender's second or subsequent offense, the imposition or execution of sentence shall not be suspended, probation shall not be granted, section 4202 of title 18 of the United States Code shall not apply, and the Act of July 15, 1932 (47 Stat. 696; D.C. Code 24–201 and following), as amended, shall not apply."

Subsection (b) of Section 7237 reads:

"(b) Sale or Other Transfer Without Written Order.—Whoever commits an offense, or conspires to commit an offense, described in section 4705(a) [the offense with which Lathem was charged] or section

4742(a) shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000. For a second or subsequent offense, the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000. If the offender attained the age of 18 before the offense and—

"(1) the offense consisted of the sale, barter, exchange, giving away, or transfer of any narcotic drug or marihuana to a person who had not attained the age of 18 at the time of such offense, or

"(2) the offense consisted of a conspiracy to commit an offense decribed in paragraph (1), the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000."

Appellant argues that the clause " * * * if it is the offender's second or subsequent offense", in subsection (d) (2) applies to the offenses set out in subsection (d) (1).

This construction is contrary to the plain meaning of the words. In terms, the clause applies only to the offense expressly limited by it, that is, the offense set out in subsection (d) (2).

If there is ambiguity, we may resort to the legislative history. Appellant seems to think that a first offender is entitled to special consideration. He is right, but it is not the consideration he has in mind. The legislative history of the statute shows that the first offender is given special consideration—when it comes to trafficking in narcotics. He is denied probation and parole and sentenced to a minimum of five years imprisonment. The House and Conference Report on the bill that became the Narcotic Control Act of 1956, points out that eighty per cent of violators of the narcotics laws are first offenders. "Therefore it is the view of your committee that the first-offender-peddler problem will become progressively worse and eventually lead to the large scale recruit-

ing of our youth by the upper echelon of traffickers unless immediate action is taken to prohibit parole, probation, or suspension of sentence in case of all persons convicted in narcotic and marihuana drugs." H.R. No. 2388 to accompany H.R. 11619; Conference Report No. 2546, June 29, 1956, to accompany H.R. 11619; 2 U.S. Code Congressional and Administrative News, 84th Cong., 2nd Sess., 1956, p. 3274. The report states specifically: "Your committee's bill would provide that the convicted narcotic and marihuana peddler would be sentenced to not less than 5 years for a first offense. * * * There would be a prohibition on the granting of probations, suspension of sentence, or parole."

Congressional intent is clear.

■■■ Probation and parole are a matter of legislative grace. There is no substance to appellant's contention that the power to grant probation and parole invades the power of the judiciary and violates the doctrine of separation of powers. Ex parte United States, 1916, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129. Affronti v. United States, 1955, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62. There is also no merit to the contention that denial of probation for a first offense is cruel and unusual punishment. The punishment, imprisonment, is usual. Ginsberg v. United States, 5 Cir., 1938, 96 F.2d 433.

### IV.

■■ Appellant challenges the sufficiency of the warrant on the ground that the complaint was inadequate because it was based on hearsay statements by Slotnik, the complaining officer. Brown v. State of Mississippi, 1936, 297 U.S. 278, 286, 56 S.Ct. 461, 80 L.Ed. 682.

Slotnik formulated all the plans of the investigation, accompanied the other agents on each trip to Lathem's drug store, and in fact participated in the illegal sales. He provided the marked money, instructed the agents what to do, stood just outside the window of the drug store, observed the negotiations with La-

them. Slotnick saw Rand pay Lathem, saw Rand receive the morphine, followed Rand from the drug store, and took the morphine into his custody. It cannot be said that the complaint was based on hearsay.

Nor can it be said that the complaint was defective, under the recent decision in Giordenello v. United States, 1958, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503. The Supreme Court declined to pass on whether a warrant may be issued solely on hearsay. The Court held that the complaint was defective because it contained [357 U.S. 480, 78 S.Ct. 1250] "no affirmative allegation that the affiant spoke with personal knowledge"; and did "not indicate any sources for the complainant's *belief*. The Court justified the holding, in part, on the ground that the complainant's testimony "clearly showed that he had no personal knowledge of the matters on which his charge was based". Here, it is clear that Slotnik had personal knowledge, based his charge on knowledge, not belief, and that the complaint is an affirmative statement from an affiant with personal knowledge. Unlike the Giordenello case, the Commissioner could determine whether there was probable cause for issuance of the warrant. He did not have to accept a mere conclusion. Lathem had the full protection he was entitled to under Criminal Rules 3 and 4, 18 U.S.C.A., and the Fourth Amendment.

### V.

The appellant's other contentions may be disposed of without much comment.

■ A. In view of Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, and Rule 5(a) of the Federal Rules of Criminal Procedure, it is somewhat of a shock to this Court to find the appellant objecting to being arraigned too "hurriedly". Law enforcement officers and courts would find themselves in a pretty pickle, if six hours is too long (Mallory) and three hours too short for arraignment. The Supreme Court is on the side of the government on this argument of the appellant.

B. We see nothing in the record to cause us to disagree with the trial judge in admitting Lathem's confession as voluntary.

C. We find the trial judge's charges eminently fair and legally correct.

Judgment is

Affirmed.

JONES, Circuit Judge (concurring specially).

I am in agreement with everything that Judge WISDOM has written for the Court. The judgment and sentence of the district court was entered on November 27, 1957. The notice of appeal was filed on December 9, 1957. Believing that the notice of appeal was filed too late, I think the appeal should have been dismissed. Rule 37(a) (2), Fed.Rules Crim.Proc., 18 U.S.C.A.