**Ruth Etta WITT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17051.**

United States Court of Appeals Ninth Circuit.

Feb. 16, 1961.

Rehearing Denied April 3, 1961.

Russell E. Parsons, Harry E. Weiss, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Thomas R. Sheridan, Robert E. Hinerfeld, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, HAMLIN and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

Appellant, a first offender, was sentenced to five years imprisonment for importing two and one-quarter ounces of heroin from Mexico, in violation of 21 U.S.C.A. § 174. She asserts (1) that the narcotics were obtained by an unlawful search and seizure; and should have been suppressed on appellant's motion; (2) without the narcotics in evidence, there was insufficient evidence to convict her; (3) 26 U.S.C.A. § 7237(d) prohibiting suspension of sentence in order to grant probation in certain narcotics offenses, in its unequal operation (by giving the United States Attorney a choice of the crime for which he asks an indictment), results in lack of due process.

Appellant admittedly had narcotics on her person when she crossed the border from Mexico to the United States. She asserts they were there innocently, that she was asked by a friend in Mexico to deliver a package in Los Angeles to a certain street corner to a person named "Bo." She had asked her "friend" in Mexico if delivering the package "was all right", and had been assured it was. She claimed to have had no knowledge the package contained narcotics. Appellant insisted the narcotics package was in her coat pocket; the witness who searched her (Mrs. Lohman) testified it was concealed in appellant's brassiere. Another witness (Customs Agent Gates) testified appellant had told him, when she was first questioned, she had no knowledge that the package contained a drug, but that later in the presence of other Customs agents, she stated that:

"she had been given the money for the narcotics by a man in Los Angeles by the name of Bo; that she had

met this Mexican in Tijuana, had given him some money and had taken the narcotics; she was supposed to deliver the narcotics to Bo at the corner of Central and Vermont, in Los Angeles, and receive $100."

In his report, made shortly after the incident of the arrest, Customs Agent Gates had written (Defendant's Ex. A):

"The only statement of any consequence made by Mrs. Witt during the interview was that she was to receive $100 for making this trip; that she had been given money to pay for the narcotics, which she was then to deliver to a person known to her as 'Bo' at Vernon and Central Streets, in Los Angeles, California. * * * "

Thus there was created a sharp dispute of fact for the determination of trier thereof—did Mrs. Witt lie as to where and how the package was carried, and whether she knew it contained narcotics; or did Customs Agents Lohman and Gates lie on these subjects?

The jury found for the government on this disputed issue of fact. We are required to view the evidence in a light most favorable to the government. Northcraft v. United States, 8 Cir., 1959, 271 F.2d 184, 187; Humes v. United States, 1898, 170 U.S. 210, 212–213, 18 S.Ct. 602, 42 L.Ed. 1011. We cannot disturb that judgment.

 Much is said on this appeal about an unlawful search. This was a border search; and while it, as well as any other, must be lawfully conducted, different rules of law are applicable, and for over a hundred years have been ap-

plicable with respect to the plenary power to search at the border and the more circumscribed search power existing anywhere else within the country's boundaries. This distinction was recognized by the very Congress which proposed for adoption the amendments to the Constitution, including the Fourth which prohibited unreasonable search and seizures. Plainly, "the members of that body did not regard searches and seizures of this kind as 'unreasonable' and they are not embraced within the prohibition of the amendment." Boyd v. United States, 1885, 116 U.S. 616, at page 623, 6 S.Ct. 524, at page 528, 29 L.Ed. 746; Carroll v. United States, 1924, 267 U.S. 132, 159–160, 45 S.Ct. 280, 69 L.Ed. 543. No question of whether there is probable cause for a search exists when the search is incidental to the crossing of an international border, for there is reason and probable cause to search every person entering the United States from a foreign country, by reason of such entry alone. That the customs authorities do *not* search every person crossing the border does not mean they have waived their right to do so, when they see fit.[1] Here a precise description of the automobile in which appellant rode across the border (though not of its passengers)[2] had been passed to the border guards as one being a possible bearer of heroin. This it was ultimately found to be. Mere suspicion has been held enough cause for a search at the border. Cervantes v. United States, 9 Cir., 1959, 263 F.2d 800, 803, note 5.

 Appellant likewise urges that she was required to strip herself of all her clothing at the time she was searched.

1. 19 U.S.C.A. §§ 482, 1581. 19 Code of Fed.Reg., part 23, § 23.1(d), reads:
"(d) A customs officer may stop any vehicle arriving in the United States from a foreign country for the purpose of examining the manifest or inspecting and searching the vehicle and may stop, search, and examine any vehicle or person within the limits of the United States on which or on whom he may have reasonable cause to believe there is mer-

chandise subject to duty or which has been introduced into the United States contrary to law. * * * "

2. The "lookout list" or "Information Bulletin" included a description of an automobile by make, year, color, and California vehicle registration number. The list further indicated that one or two Negro women would be in the vehicle (Gov.Ex. 1).

Such a search is frequently necessary.[3] We take it that is the reason Congress, in its wisdom, has seen fit to authorize the employment of female customs inspectors who have the specialized duty of searching females crossing our borders.[4] No force was used against appellant, and none is charged. No indignities to the appellant are charged against the customs inspectors. The search was reasonable and the resulting seizure was lawful.

Having made that determination, we cannot suppress the evidence uncovered by such lawful search. The appellant having the heroin on her person, it was for the jury to determine how and why it was being so carried. On this determination rested the guilt or innocence of the appellant.

■■ Appellant next objects that she did not receive probation—pointing to her previous good record. Section 7237, Title 26 U.S.C.A., relates generally to the violation of laws relating to narcotic drugs and to marijuana. As amended, effective July 19, 1956 (70 Stat. 568), it provides, in pertinent part, as follows in subdivision (d):

"(d) *No suspension of sentence; no probation; etc.—*

"Upon conviction—

"(1) of any offense the penalty for which is provided in * * * subsection (c) * * * of section 2 of the Narcotic Drugs Import and Export Act, as amended * * * the imposition or execution of sentence shall not be suspended, *probation shall not be granted,* section 4202 of Title 18 of the United States Code shall not apply, and the Act of July 15, 1932 (47 Stat. 696; D.C. Code 24–201 and following), as

amended, shall not apply." (Emphasis added.)

21 U.S.C.A. § 174 is based on former subsections (c) and (f) of the Act of February 9, 1909, as amended by the Act of May 26, 1922, known as the Narcotic Drugs Import and Export Act (cf. 21 U.S.C.A. Ch. 6, 42 Stat. 596.) That Act provided, before amendment, a penalty of "not more than ten years." In 1951, the minimum penalty was raised to two years for the first offense. By the 1956 amendment, the penalty was changed for first offenders to imprisonment of "not less than five or more than twenty years." 70 Stat. 570. Cf. 1956 U.S.Code Cong. & Adm.News, Vol. 2, pp. 3274–3322.

Appellant urges that while Title 26 U.S.C.A. § 7237(d), prohibiting suspension of sentence for the granting of probation upon conviction of certain narcotic offenses appears to be fair on its face, "administratively it is applied with an evil eye and an unequal hand in a manner forbidden by the due process clause of the Fifth amendment to the Constitution of the United States." We need not tarry long on this point. As we understand appellant, she urges lack of due process because of the value judgment which must be exercised by the United States Attorney in determining under which of the several existing statutes, which may be applicable to the illegal importation of narcotics, a defendant should be prosecuted. Some discretion has always existed in the hands of prosecuting attorneys, and always will. We have discussed and disposed of this point in Marcella v. United States, 9 Cir., 1960, 285 F.2d 322. Cf. Lathem v. United States, 5 Cir., 1958, 259 F.2d 393, and particularly the language of the court at page 397.[5] The sentence being within

---

3. Murgia v. United States, 9 Cir., 1960, 285 F.2d 14; King v. United States, 5 Cir., 1958, 258 F.2d 754, note 5; Blackford v. United States, 9 Cir., 1957, 247 F.2d 745. "The court is bound to take notice of public facts." The Apollon, 9 Wheat. 362, 6 L.Ed. 111.

4. 19 U.S.C.A. § 1582.

5. This reads:
 "Appellant seems to think that a first offender is entitled to special consideration. He is right, but it is not the consideration he has in mind. The legislative history of the statute shows that the first offender is given special consideration—when it comes to trafficking in narcotics. He is denied probation and

the limits allowed by the statute, this court has no authority to lessen or in any way change the sentence. Brown v. United States, 9 Cir., 1955, 222 F.2d 293; Freeman v. United States, 9 Cir., 1917, 243 F. 353, 357.

The judgment is affirmed.

---

parole and sentenced to a minimum of five years imprisonment. The House and Conference Report on the bill that became the Narcotic Control Bill of 1956, points out that eighty per cent of violaters of the narcotic laws are first offenders. 'Therefore it is the view of your committee that the first-offender-peddler problem will become progressively worse and eventually lead to the large scale recruiting of our youth by the upper echelon of traffickers unless immediate action is taken to prohibit parole, probation, or suspension of sentence in case of all persons convicted in narcotic and marihuana drugs.' * * * 2 U.S. Code Congressional and Administrative News, 84th Cong., 2nd Sess., 1956, p. 3274. * * * Congressional intent is clear." 259 F.2d at page 397.