**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sandra Denise JOHNSON, Defendant-Appellant.**

**No. 24563.**

United States Court of Appeals, Ninth Circuit.

March 20, 1970.

Rehearing Denied June 22, 1970.

Howard E. Beckler (argued), Holly-
wood, Cal., for appellant.

Warren Reese (argued), Asst. U. S.
Atty., Harry D. Steward, U. S. Atty.,
San Diego, Cal., for appellee.

Before HAMLEY and BROWNING,
Circuit Judges, and BYRNE,* District
Judge.

* Honorable William M. Byrne, Senior Dis-
trict Judge, United States District Court

**631**

PER CURIAM:

Defendant was convicted of smug-
gling, concealing, and transporting nar-
cotics in violation of 21 U.S.C. §§ 173
and 174. Her sole contention on appeal
is that the trial court erred in dismiss-
ing her motion to suppress the heroin
introduced into evidence against her.
She alleges that the evidence was the
product of an illegal strip search of her
person at the border.

The prosecution called two wit-
nesses at the hearing on defendant's mo-
tion to suppress. The first, Richard L.
McCown, testified that he was a customs
inspector stationed at San Ysidro, Cali-
fornia, that he had considerable experi-
ence in examining persons crossing the
border for narcotics, and that on August
18, 1968, he had observed defendant and
a female companion entering the United
States by foot, had talked with them,
and had then requested a female Cus-
toms agent to search defendant. Gov-
ernment counsel then asked, "Were you
suspicious before you made that re-
quest?"; and Inspector McCown re-
plied, "I was, yes, sir."

The prosecution's second witness was
Netta W. Lohman, a part-time Customs
inspectress. She testified that she had
conducted the strip search of defendant
and had found the heroin in question
hidden in defendant's panties. No fur-
ther testimony was presented.

The trial judge dismissed defendant's
motion, stating, "I cannot see where one
can differentiate between the various
degrees of suspicion, if an experienced
police officer of some twenty-seven
years of experience as Mr. McCown has,
suspects enough to request a female
Customs agent to search it seems to me
it is a real suspicion."

This ruling was erroneous in light of
our subsequent decision in United States

for the Central District of California, sit-
ing by designation.

v. Guadalupe-Garza, 421 F.2d 876 (9th Cir. Feb. 2, 1970).[1]

In Henderson v. United States, 390 F.2d 805, 808 (9th Cir. 1967), we held that the forced disrobing of a person entering the country violated the Fourth Amendment unless there was "at least a real suspicion, directed specifically to that person."

In Guadalupe-Garza, Judge Hufstedler wrote:

"[N]either *Henderson* nor our decisions following it have further defined the 'real suspicion' test stated there. We do so now.

'Real suspicion' justifying the initiation of a strip search is subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purpose of transporting it into the United States contrary to law.

The objective, articulable facts must bear some reasonable relationship to suspicion that something is concealed on the body of the person to be searched; otherwise, the scope of the search is not related to the justification for its initiation, as it must be to meet the reasonableness standard of the Fourth Amendment. (Cf. Terry v. Ohio, supra, 392 U.S. 1 at 29, 88 S.Ct. 1868, 20 L.Ed.2d 889; Warden Md. Penitentiary v. Hayden (1967) 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (Mr. Justice Fortas, concurring).)" 421 F.2d at 879.

There are no "objective, articulable facts" in the record to support Inspector McCown's suspicion. If such facts existed, it was incumbent upon the government to prove them.[2]

And, of course, the discovery of contraband in defendant's underclothing does not validate the search. United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

Reversed.

BYRNE, District Judge:

I respectfully dissent.

The majority reverses "in light of our subsequent decision in United States v. Guadalupe-Garza, 421 F.2d 876 (9th Cir. Feb. 2, 1970)."

*Guadalupe-Garza* is distinguishable from the instant case on two main grounds: (1) the factual settings of the cases are significantly different; and (2) the rule of "real suspicion" that was defined in *Guadalupe-Garza* has no application to the issues in the present case.

The *Guadalupe-Garza* court stated, "neither *Henderson* nor our decisions following it have further defined the 'real suspicion' test stated there. We do so now." Reference to certain facts in *Henderson* as well as those in *Guadalupe-Garza* is necessary to a clear understanding of the decision in *Guadalupe-Garza* and what was intended as the definition of the "real suspicion" test stated in *Henderson*.

The crux of this court's reversal in *Henderson* concerned the request by the Inspectress that the appellant bend over and "with her hands pull her buttocks apart and up to permit inspection of her vagina". This was followed by the removal of narcotics from appellant's va-

---

1. In Huguez v. United States, 406 F.2d 366, 376 (9th Cir. 1968), we held in a similar context that the standards governing body cavity searches enunciated in several cases decided by our court subsequent to the trial court's decision in that case were "controlling and imperative upon us."

2. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951); McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948);

Cohen v. Norris, 300 F.2d 24, 32 (9th Cir. 1962); Cervantes v. United States, 278 F.2d 350, 353 (9th Cir. 1960); Wrightson v. United States, 95 U.S.App. D.C. 390, 222 F.2d 556, 558 (1955); 3 Wright, Federal Practice & Procedure § 675, at 126–27 (1969 ed.); *see also* Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); United States v. Vickers, 387 F.2d 703, 706 (4th Cir. 1967).

gina. In the absence of needle marks on appellant's body, vaseline around the vagina, or other circumstances *Henderson* held that the "clear indication" or "plain suggestion" required by Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and by Rivas v. United States, 368 F.2d 703 (C.A. 9, 1966) was not satisfied to justify an intrusive search of appellant's vagina.

With regard to the searches of the person of Guadalupe-Garza, the court said, "The scope of the particular intrusion, the manner of its conduct, and the justification for initiating it must all be considered. The test of reasonableness is incapable of comprehensive definition or of mechanical application; in each case the need for the particular search is balanced against the invasion that the search entails." (citations omitted)

Guadalupe-Garza was taken to a hospital and upon the direction of a customs agent, a doctor probed his rectal tract. The result was negative. A vocational nurse then injected an emetic into his hip to induce vomiting. He "regurgitated an insufficiently small amount". Oral emetics were then administered "two or three times". He was handcuffed when he was caused to drink the emetics. About 8:00 o'clock p.m. Guadalupe-Garza disgorged the contents of his stomach, including two balloons together containing almost 5 grams of heroin.

I turn now to the instant case. In our case Customs Inspectress Lohman testified that she asked the appellant "to please remove all of her clothing and hand them to me". After appellant complied, Lohman found two packages of heroin "in the crotch of her under-panties". The inspectress took possession of the narcotics and the appellant dressed.

There was no evidence that Lohman conducted even a casual examination of appellant's skin. Contrasted with *Henderson* and *Guadalupe-Garza*, only the clothes of the appellant were examined. There was no searching investigation of the appellant's body surface, no examination of her skin or private parts.

This case is "on all fours" with Witt v. United States, 287 F.2d 389 (C.A. 9 1961). The only difference being that after removing her clothing, the heroin was found in Witt's brassiere while Johnson's found in her panties. The majority makes no effort to distinguish *Witt* where the same type of search and, incidentally, by the same inspectress, was specifically approved by this court. It would seem to me that the majority should at least suggest that the case be heard *en banc* rather than attempting to overrule *Witt* sub silentio with a per curiam opinion.