THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. MARK ALLEN DWORKIN, MARILYN DWORKIN, RHONA C. REISER and EUGENE HAMMOND, Respondents.

Fourth Department, May 20, 1971.

*Aldo L. Di Florio, District Attorney (Shavasp Hanesian* of counsel), for appellant.

*William M. Kunstler* and *Everett M. Barlow* for respondents.

DEL VECCHIO, J. P.   On this appeal from an order granting a motion to suppress, we are called upon to determine whether defendants have established that the search and seizure of a quantity of marijuana were unlawful as violative of their constitutional rights.

On August 18, 1968 a vehicle owned and operated by defendant Mark Dworkin, in which the other three defendants were passengers, entered the United States by way of the Lewiston-Queenston Bridge in Niagara County, New York.   At the United States Customs checkpoint a customs inspector, making a routine inspection of the vehicle, discovered and seized a quantity of drugs subsequently identified as marijuana.   Defendants were charged with criminal possession of a dangerous drug.   After a preliminary hearing, they were held for the action of the Grand Jury and later indicted.   Thereafter, defendants moved for an order suppressing the introduction into evidence at the trial of the indictment of any narcotic drugs seized, on the ground that " said seizure was in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States."

Upon the hearing of the motion defendants called no witness but relied on the testimony given at the preliminary hearing by the customs inspector who had seized the narcotics.   He testified that when defendant's car reached the checkpoint it went through a preliminary line screening by an immigration officer; that this is a type of screening in which people entering the country are asked where they were born, where they are coming from and whether they have anything to declare; that the immigration officer noticed some literature relating to draft resistance lying on the rear shelf of the auto, pulled the car over to the side and asked the customs inspector, who was inside the office, to make a secondary customs inspection of the vehicle; that one of the inspector's duties was to search any vehicle which he believed to be in need of searching; that no one was in the car as he approached it but, at his request, defendant Dworkin unlocked the trunk in which the inspector found a cloth bag containing a ball of aluminum foil with seeds which appeared to him to be marijuana; that he took the items into the customs office and showed them to the customs supervisor, then notified the United States Customs Agent who made a test and concurred that the substance was marijuana; that at the agent's request he returned to the car, picked up 30 to 40

pieces of the draft literature and gave it to the Agent; that at this time he also found a leatherette bag behind the driver's seat which contained marijuana. The testimony also established that many people are asked to open their car trunks as Dworkin was on this occasion; that the inspector had no reason to believe there was marijuana in the car prior to its discovery; that he had no information about the car containing marijuana prior to searching it; that the car was stopped routinely and was searched on a spot-check basis; that this is done quite frequently; that he discovered something after the routine stop and that this also happens on other occasions.

In argument of the motion defendants asserted, not only that their Fourth Amendment rights had been violated as alleged in the motion papers, but also that First Amendment rights had been infringed—an issue not raised or presented by the moving papers. The District Attorney, on the other hand, pointed out that his answering affidavit was responsive to the motion papers and was not intended as an answer to defendants' brief. He then limited himself in argument to a discussion of the Fourth Amendment objection.

The County Court Judge concluded that probable cause for the search did not exist. He also found that "the search was not even energized by suspicion on the part of the Customs officials, but by the fact the Customs officials saw anti-draft literature present on the shelf of the back seat of the automobile" and held that the search and seizure were violative of defendants' rights under both the First and Fourth Amendments. For reasons which follow, we hold that the record does not support that determination and that the order should be reversed.

Upon this appeal defendants raise the same two points argued before County Court and rely heavily on the reasoning stated in the court's memorandum decision.

In reviewing the order granting defendants' motion, we bear in mind that "the defendant carries the burden of *proof* when he challenges the legality of a search and seizure (see, e.g., *Nardone* v. *United States,* 308 U. S. 338, 342)" (*People* v. *Whitehurst,* 25 N Y 2d 389, 391; *People* v. *Entrialgo,* 19 A D 2d 509, affd. 14 N Y 2d 733). Defendants have failed to sustain the burden of establishing that the search and seizure were unlawful.

With regard to the Fourth Amendment protection against illegal searches, defendants concede that customs officials have the right to stop and examine any vehicle, person or baggage for contraband at a border search without probable cause. They maintain, however, that under such circumstances any contraband so discovered may not be used in evidence in a criminal

trial. We disagree. *United States* v. *Summerfield* (421 F. 2d 684) is authority to the contrary. There, a border search of a body cavity without probable cause predicated on "real suspicion" was held lawful and the court affirmed a conviction of a narcotics violation over defendant's contention that drugs seized should not have been admitted into evidence on the trial as they were the product of a probe that violated his Fourth Amendment right to be free from unreasonable searches and seizures.

To the same effect is *Alexander* v. *United States* (362 F. 2d 379, cert. den. 385 U. S. 977). In that case a conviction of concealing a quantity of heroin was affirmed over defendant's claim that there was an unreasonable border search of an automobile and seizure of the heroin since the customs officers lacked probable cause to believe that the vehicle contained unlawfully imported merchandise. Concluding that probable cause was not necessary for a border search, the court found no error in the receipt of the evidence. If the search is lawful, then any contraband discovered and seized may be used as evidence in a criminal prosecution.

Defendants also assert that, although probable cause is not required, a border search must be "reasonable" and that some suspicion of the presence of contraband is necessary to make it reasonable. They argue that, since there is no proof that defendants acted suspiciously, since the customs officers had no information about the car prior to its coming to the checkpoint and since there was no reason to believe there was marijuana in the car prior to its discovery, the search was unreasonable and therefore a violation of the Fourth Amendment.

However, the law is well settled that "the mere fact that a person crosses the border is sufficient to subject him to a border search of his baggage, vehicle or personal effects." (*United States* v. *Summerfield, supra,* p. 685). The dissenting Justice agrees that such routine detention and inspection is not deemed an unreasonable search.

In *Henderson* v. *United States* (390 F. 2d 805, 808) the court said of border searches: "it is too well established to require citation of authority that such searches are unique, that the mere fact that a person is crossing the border is sufficient cause for *a* search. Thus every person crossing our border may be required to disclose the contents of his baggage, and of his vehicle, if he has one. The mere crossing of the border is sufficient cause for such a search. Even ' mere suspicion ' is not required."

In disposing of defendants' contention we adopt the statement

in *United States* v. *Guadalupe-Garza* (421 F. 2d 876, 878):
" Neither history nor contemporary concepts of dignity suggests
to anyone that he will be free from official scrutiny on crossing
an international boundary. He must anticipate that he will be
detained temporarily at the border. He will be interrogated.
His vehicle, if any, and his personal effects will be examined.
Such routine detention has never been equated with an arrest,
however that term is defined in other contexts, and *such routine
inspections are not deemed unreasonable searches.*" (Emphasis
supplied.)

We conclude that, upon the facts of this case, the customs
inspector had the right to search defendant Dworkin's vehicle as
he entered the United States and that the search was reasonable,
even though he was not aware of the presence of drugs when the
search was initiated.

Authorities cited by defendants are readily distinguishable on
the facts in that they deal with searches of apparel on the person,
requiring mere suspicion, or of the body, requiring real suspi-
cion, or at points other than the border, requiring probable cause.
In the present case, however, we apply the law that a border
search of a vehicle, even though without probable cause or sus-
picion, is not unreasonable.

Moreover, if some suspicion were required to validate the
search or to make the seized evidence admissible, as argued by
defendants — and the People asserted at the hearing on the sup-
pression motion that the trained border officials were suspicious
— this element was supplied when the immigration officers
observed the presence in the vehicle of antidraft literature, which
gave reasonable ground for apprehension that contraband was
being transported into the country.

It is now asserted that the sole and exclusive reason for search-
ing the car was that the immigration officers had noticed some
draft resistance literature on the rear shelf of the car and thus
pulled it over to the side for a secondary customs inspection.
Defendants argue that the search was energized by the antidraft
literature and therefore it became an unlawful search in violation
of the First Amendment.

Assuming that a viewing of the antidraft literature initiated
the secondary search, this did not make the search unlawful.
In the leading case of *Carroll* v. *United States* (267 U. S. 132, 154)
the Supreme Court, speaking of random searches on the chance
of finding contraband, said: " Travellers may be so stopped in
crossing an international boundary because of national self
protection reasonably requiring one entering the country to

identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in." Section 1305 of title 19 of the United States Code provides in pertinent part: " (a) All persons are prohibited from importing into the United States from any foreign country any book, pamphlet, paper, writing, advertisement, circular, print, picture, or drawing containing any matter advocating or urging treason or insurrection against the United States, or forcible resistance to any law of the United States ". Certainly, the immigration officer, as a border official engaged in the exclusion of nonimportable material, was familiar with this statute. It is entirely reasonable that, in the performance of his duty, he might have concluded that draft resistance publications and the vehicle in which they were being carried would require closer inspection and examination to determine whether in fact the literature was within the prohibition of section 1305 and whether the car did contain contraband.

There is nothing in the record to indicate that the literature seized was importable; it was delivered by the inspector to the Customs Agent and defendants admit they do not know where it is today. The only reference to this issue in the record is on cross-examination of the customs inspector: " Q. And to your knowledge was there anything illegal that you know about with reference to the draft literature? If you know. A. No." Of course, the witness could not have known whether it was illegal or prohibited until after the literature had been seized and held by the customs officials and a judgment had been rendered by a District Court as prescribed in section 1305.

It is significant that, even *after* the marijuana had been discovered, seized and identified by the Customs Agent, 30 to 40 pieces of literature were taken from the car by the inspector and turned over to the Agent, presumably to await a judgment of the District Court as to its importability.

Unquestionably, the presence of literature concededly described as " anti-draft " justified a decision by an immigration officer to subject the vehicle to a secondary customs inspection in the face of a statute such as section 1305 of title 19 of the United States Code, which made literature advocating forcible resistance to any law of the United States contraband. The immigration officer may well have been suspicious that the material was prohibited. Even in other than border searches, a search of an automobile may at times be justified by the belief, reasonably arising out of circumstances known to the seizing officer, that the vehicle contains that which by law is subject to seizure or destruction (*Carroll* v. *United States, supra*).

Finally, the record does not support defendants' claim that, since the search was energized by the observation of the anti-draft literature, it was done for an invalid reason and, even if otherwise legal, was impermissible. The invalid and unconstitutional motive assigned in argument at the suppression hearing was "punishment for the exercise of a First Amendment right motivated by the draft literature or anti-draft literature in the car " or, as restated in the brief, " a desire to harass and intimidate defendants because their vehicle contained such material ". Nothing before us sustains this assertion. Defendants *did not* testify at the hearing and nowhere in the record is there a scintilla of evidence of harassment or intimidation while the car was stopped and searched and the material seized and examined. The record simply shows that, in the course of his duties, the customs inspector asked Dworkin to open the trunk and, complying with the request, the latter unlocked it without objection. No indignities to defendants are charged against the border officials.

To summarize, we conclude (1) that the customs officer was *performing* a routine, lawful border search of defendant Dworkin's vehicle for which neither probable cause nor suspicion was required when the marijuana was discovered, (2) that there was in fact ground for suspicion in the presence and observation of antidraft literature in the vehicle, (3) that defendants have failed to show an improper motive for the inspection, (4) that, even if the immigration officer's selection of defendant's car for a routine secondary customs inspection resulted from the observation of the literature, there was a reasonable and proper basis for such determination — viz., that the antidraft material and vehicle might be examined to aid in the performance of the duty to exclude writings prohibited by section 1305 of title 19 of the United States Code, and (5) that the search and seizure of the marijuana were lawful and without violation of defendants' rights under the Constitution.

The dissenting Justice contends that the search in this case was not routine and evenhanded, but that it was selective and purposeful. The record does not warrant a condemnation of the search of defendant's automobile on this ground. Defendants offered no proof at all that immigration officials discriminated against them in subjecting their vehicle to a routine secondary customs inspection. There is nothing before us to show that there has been any discrimination between persons in similar circumstances. There is no proof that border officers did not inspect all cars with questionable literature nor was it shown that the inspections did not extend to vehicles without antidraft

literature. Furthermore, there was testimony that cars are frequently searched on a spot check basis. The fact that some cars are searched and others are not, does not invalidate the search; customs authorities do not waive the right to search persons or vehicles crossing the border, when they see fit, by not searching each and every one which crosses (*Witt* v. *United States,* 287 F. 2d 389, 391).

The dissenting Justice also presses defendants' objection that the People are for the first time in this court raising section 1305 of title 19 of the United States Code in opposition to the assertion of violation of First Amendment rights. As noted above, the claim of infringement of First Amendment rights was not . contained in the motion papers served by defendants. It was only at the oral argument of the motion and from the decision of the County Court Judge that the People became apprized that the motive of the immigration officer who selected the Dworkin car for inspection was being made a critical issue in the case. In this circumstance, they were certainly entitled to respond to the issue belatedly injected by defendants and to call to this court's attention a pertinent provision of a Federal statute of which we would in any event be entitled to take judicial notice (CPLR 4511).

Furthermore, the fact that the People did not answer defendants' First Amendment claim at the hearing does not relieve this court of the performance of the judicial function to examine independently the determination which served in part as the basis for the order under review. (Cf. *Sibron* v. *New York,* 392 U. S. 40, 58.)

The order should be reversed and the motion denied.

CARDAMONE, J. (dissenting). It has long been well settled that border searches may be made without probable cause and without real or even '' mere '' suspicion, and that such routine detention and inspection is not deemed an unreasonable search (*United States* v. *Guadalupe-Garza,* 421 F. 2d 876, 878; *Henderson* v. *United States,* 390 F. 2d 805, 808). The routine search of travelers crossing an international border is justified in the interest of national self-protection (*Carroll* v. *Untied States,* 267 U. S. 132, 154).

Such a routine, evenhanded and at random search is not present in this case. The record reveals and the People do not dispute that the search here was not predicated upon any kind of suspicion, but solely upon the presence of antidraft literature present on the shelf of the back seat of the automobile. The customs inspector admitted that to his knowledge there was nothing

illegal about the draft literature. Counsel for the defendants argued at the suppression hearing that the search " on its face is a violation of the First Amendment ". The defendants presented their version of the facts in this case in an affidavit to which they attached the transcript of the preliminary hearing. The People took no issue with defendants' presentation of the facts and have failed to create a factual question on any material issue. Therefore, the findings made by the trial court that this search was " predicated upon the defendants' exercise of their rights under the First Amendment " were appropriate and well supported on this record. Thus, this search must be construed to have been not routine but selective and purposeful. The marijuana recovered was the fruit of this unpermitted action and was properly suppressed (*Wong Sun* v. *United States,* 371 U. S. 471).

Further, such searches, if permitted, will cause immediate and irreparable injury to the right of freedom of speech. It has been long recognized that free expression is of transcendent value to all persons, not merely to those seeking to protect their rights, and because the full exercise of the First Amendment freedom is a fragile right sensitive to suppression, the hazard of its loss or substantial impairment is critical (*Baggett* v. *Bullitt,* 377 U. S. 360; *Dombrowski* v. *Pfister,* 380 U. S. 479, 486; *Wolff* v. *Selective Serv. Local Bd.,* 372 F. 2d 817, 822).

While it may be necessary to re-emphasize the authority and responsibility of customs inspectors at our borders, nevertheless they must exercise their important and vital duties consistent with fundamental constitutional safeguards guaranteed all citizens and not in abrogation of constitutional rights (cf. *Tinker* v. *Des Moines School Dist.,* 393 U. S. 503, 507). It is precisely because this search violated defendants' constitutional rights that the evidence obtained thereby must be suppressed (*Weeks* v. *United States,* 232 U. S. 383, 392). That is, the evidence (marijuana) obtained by the Government's own wrong, may not be used at all (*Silverthorne Lbr. Co.* v. *United States,* 251 U. S. 385, 392).

The majority would permit the People to justify the selective search on a theory not presented to the trial court. On oral argument in this court the People for the first time contended that the customs inspector singled out defendants for a secondary inspection to determine whether their antidraft literature violated a Federal statute prohibiting the importation of treasonous literature. In my view the People had ample opportunity to meet the First Amendment argument at the suppression hearing where the contention they have now raised could have been

explored in factual detail. The First Amendment argument was clearly and unequivocally presented at the suppression hearing by defendants' counsel on at least two separate occasions. The District Attorney had an opportunity to respond then and a further opportunity to submit any relevant contention in the period of time between the suppression hearing in July, 1969 and County Court's memorandum of May, 1970. The District Attorney made no claim that he was unfairly surprised by the introduction of the First Amendment argument. Under these circumstances the general rule that an appellant is confined to questions, issues and theories which were litigated before the trial court clearly applies. (*Brown* v. *Brown*, 34 A D 2d 727; *Highland Development Corp.* v. *State of New York*, 23 A D 2d 705; 10 Carmody-Wait 2d, New York Practice, §§ 70:300, 70:414, 70:415.)

The order appealed from should be affirmed.

WITMER, MOULE and HENRY, JJ., concur with DEL VECCHIO, J. P.; CARDAMONE, J., dissents in an opinion.

Order reversed and motion denied.