**UNITED STATES of America,
Appellee,**

v.

**Larry Albert WILLIAMS, Appellant.
No. 71–1239.**

United States Court of Appeals,
Ninth Circuit.
April 7, 1972.

Edward A. Infante (argued), of Pedersen & Flowers, San Diego, Cal., for appellant.

Shelby R. Gott (argued), Robert H. Filsinger, Asst. U. S. Attys., Harry D. Steward, U. S. Atty., San Diego, Cal., for appellee.

Before MERRILL and ELY, Circuit Judges, and FERGUSON, District Judge.*

ELY, Circuit Judge:

Williams was convicted, in a nonjury trial, of having violated 18 U.S.C. § 545, by smuggling, concealing, and transport-

ing undeclared drugs. He appeals, contending that the contraband was discovered as a result of an illegal search. We deferred submission of the appeal, pending the Supreme Court's disposition of United States v. Johnson, 425 F.2d 630 (9th Cir. 1970), cert. granted, 400 U.S. 990, 91 S.Ct. 451, 27 L.Ed.2d 437 (1971). That disposition having been made,[1] we have now concluded that the judgment of conviction must be reversed.

Williams entered the United States at San Ysidro, California, riding as a passenger in a car driven by one Mills. The border customs official in the primary inspection area noted, from information supplied by a computer, that there was some reason to be suspicious about Mills' vehicle. He therefore referred Mills and Williams to Inspector Addis in the secondary inspection area.

Addis made further inquiry through the computer and learned that the occupants of the automobile bearing the license plates then affixed to Mills' vehicle were suspected of having smuggled contraband into the United States. He also discovered that the information reported by the computer had been given to the Customs Bureau by a narcotics officer of long standing with the San Diego Police Department and an acquaintance of Addis.

On the basis of this information, Addis then conducted a "strip" search of Williams' body. He found, secreted in Williams' crotch, beneath his underpants, a plastic bag containing the contraband.

The critical issue is whether Addis had adequate legal justification to conduct the body search.[2] The validity of such an intrusion depends upon the existence of "a real suspicion, directed spe-

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

1. Upon motion of the Solicitor General of the United States, the Writ of Certiorari was dismissed. 404 U.S. 802, 92 S.Ct. 38, 30 L.Ed.2d 43 (1971).

2. If there is any meaningful legal distinction between searches which have been variously described as "skin searches," "body searches," and "strip searches," it is not reflected in the briefs of the parties. If, however, such distinction can be made, it is not significant in the circumstances of this case.

cifically to [Williams], that [he was carrying contraband]." Henderson v. United States, 390 F.2d 805, 808 (9th Cir. 1967). *See also* United States v. Shields, 453 F.2d 1235 (9th Cir. 1972). The existence of the necessary "real suspicion" depends, in turn, upon a showing of "objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that [contraband] . . . is *concealed on the* body of the person to be searched. . . . ." United States v. Guadalupe-Garza, 421 F.2d 876, 879 (9th Cir. 1970) (Emphasis supplied.); United States v. Johnson, *supra*.

There is no evidence that either Addis or the official who referred Mills and Williams to his attention had any independent, articulable, personal suspicion, prior to the search, that Williams himself carried contraband. To justify the search, reliance was solely upon the computer report. The report was deficient.

We recognize that computer reports have become an indispensable police tool, and that, if adequate, they can support drastic police action. It is a valid assumption that one originating such a report, when known to be reliable, had the information legally necessary to support a search. But, as the Supreme Court recently held in a case involving a similar question, "[w]here . . . the contrary turns out to be true, an otherwise illegal [Fourth Amendment intrusion] cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the [intrusion]." Whitely v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313 (1971).[3]

Our critical focus here, then, is on the sufficiency of the information upon which the computer report was based, and the question is whether the police officer originating the report had such information as would have justified *him*

in personally searching Williams for smuggled contraband. The basis of his information was revealed during the hearing on Williams' pre-trial motion to suppress. In pertinent part, the Officer testified:

Q Could you tell me when you transmitted [the information regarding Mills' car], and to the best of your recollection what it consisted of?

A Yes. . . . [S]ome time in the latter part of May, I'd received information that the occupants of this vehicle were bringing marijuana and narcotics into this Country from Mexico.

Q Whom did you receive this information from?

A At the present time I can't remember for certain who it was.

Q Is it fair to say that you simply acted as a conduit, in other words, you transferred that information to the Border from the individual who gave it to you?

A Yes.

\* &ast; &ast; &ast; &ast; &ast;

Q . . . [Y]ou don't transmit information to the Border . . . on every time you get information somebody may smuggle something?

A No.

\* &ast; &ast; &ast; &ast; &ast;

Q What would you need in addition to just someone alleging that somebody is going to smuggle something before you would relay that information to the Border?

A I would, first, evaluate the information to see how important it was, and if I felt it was important enough and reliable enough, I would give it to Customs.

Q You have no independent recollection, today, of this particular lookout?

A No, I do not.

---

3. *Whitely* involved the validity of an arrest made pursuant to a radio bulletin. Since the arresting officers offered no independent basis for the arrest, the Court looked to the basis for the arrest warrant, the foundation for the radio bulletin, to determine the validity of the arrest.

This vague testimony, demonstrating that the Officer was relying on an unremembered informant of, perhaps, uncertain reliability, failed to establish the existence of that articulable "real suspicion" upon which a body search must be predicated.[4] Therefore, this search was illegal, and Williams' motion to suppress the evidence should have been granted.

Reversed.

4. Evidence of the requisite suspicion could, perhaps, have been presented had there been a record of the basis of the Officer's information, preferably, by input into the computer itself.