**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Paul CASTRO and Nena Castro,
Defendants-Appellants.**

**No. 72-2638.**

United States Court of Appeals,
Ninth Circuit.
April 3, 1973.

James M. Gattey (argued), Gregorcich, Gattey & Hunt, San Diego, Cal., for defendants-appellants.

Robert P. Risso, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before KOELSCH and CARTER, Circuit Judges, and HARRIS,* Senior District Judge.

* Honorable George B. Harris, Senior District Judge, Northern District of California, sitting by designation.

JAMES M. CARTER, Circuit Judge:

Appellant Frank Paul Castro appeals from convictions below on ten counts of an indictment. Appellant Nena Castro appeals from convictions on five counts. Both appellants were convicted in Count 1 of a conspiracy to accept bribes to issue fraudulent immigration documents and to defraud the United States of the faithful services of Frank Paul Castro.

Appellant Frank Paul Castro was convicted additionally on Counts 2, 3, 4, and 5, charging the seeking and accepting of bribes for the issuance of immigration documents to Mexican citizens, and on Counts 10, 11 and 12, charging aiding and abetting the procurement by fraud of immigration documents by Mexican citizens, and finally, on Counts 13 and 15, alleging perjury before the Grand Jury.

Appellant Nena Castro, in addition to being convicted in Count 1, the conspiracy count, was convicted under Counts 4 and 5, charging aiding and abetting bribery, and on Counts 11 and 12 of aiding and abetting the fraudulent procurement of immigration documents for Mexican citizens.

The sentence imposed on appellant Frank Paul Castro, pursuant to 18 U.S. C. § 4208(a)(2), was a total of 12 years and a fine of $10,000.00. Appellant Nena Castro was sentenced, pursuant to the same statute, to a three-year term on Counts 1, 4, 5, 11 and 12, to run concurrently.

## ISSUES

(1) Appellant Frank Paul Castro contends that permitting Count 9 to go to the jury and afterwards granting a judgment of acquittal was error.

(2) Appellant Nena Castro contends that the evidence was insufficient to convict her as an aider and abetter in Counts 4, 5, 11 and 12.

(3) Both appellants contend that the trial court erred in admitting evidence of a prior similar conspiracy on the issue of plan, scheme and intent.

We affirm as to each appellant.

## I.

### Count 9

■ Count 9 charged appellant Frank Paul Castro with aiding and abetting the sale and delivery to Ramon Medina, a citizen of Mexico, of immigration documents, knowing them to have been falsely processed, in violation of 18 U.S. C. §§ 2 and 1546.

A motion for judgment of acquittal was denied as to Count 9 and the jury returned a verdict of guilty on the count on April 3, 1972. On May 4, 1972, the court granted the motion for judgment of acquittal, as it had a right to do under Rule 29, Fed.R.Crim.P. Frank Paul Castro was not sentenced on Count 9.

Appellant cannot now complain of the earlier denial of the motion when, in fact, the court later granted the motion.

■ Appellant Frank Paul Castro contends that allowing the jury to consider Count 9 emphasized the extent of his involvement in criminal activity. We find no error, but if there was, it was harmless error in view of the overwhelming evidence of Castro's guilt on the other counts.

## II.

### Nena Castro

Nena Castro expressly concedes the sufficiency of the evidence as to Count 1, the conspiracy count. She contends the evidence was insufficient to convict her as an aider and abetter under Counts 4, 5, 11 and 12.

■ Since the sentences on all five counts ran concurrently, we need not examine the validity of the convictions on Counts 4, 5, 11 and 12. Hirabayashi v. United States, 320 U.S. 81, 105, 63 S. Ct. 1375, 87 L.Ed. 1774 (1943); Benton v. Maryland, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); Gonzales v. United States (9 Cir. 1972), 461 F.2d 1000, 1001 (per curiam); cert. den., 409 U.S. 914, 93 S.Ct. 230, 34 L.Ed.2d 175.

■ However, we have reviewed the evidence as to Counts 4, 5, 11 and 12

and find it sufficient. She engaged in activity seeking to make the proposed illegal sale of the immigration documents successful. Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949); United States v. Manna (2 Cir. 1965), 353 F.2d 191, cert. den., 384 U.S. 975, 86 S.Ct. 1868, 16 L.Ed.2d 685 (1966).

■ The testimony of an accomplice, here Concha Castrellon, if believed by the jury, is sufficient to support a conviction. Bible v. United States (9 Cir. 1963), 314 F.2d 106, cert. den., 375 U.S. 862, 84 S.Ct. 131, 11 L.Ed.2d 89 (1963).

■ Finally, appellant Nena Castro took the witness stand and denied her participation and involvement in the offenses charged in Counts 4, 5, 11 and 12. The jury could draw affirmative inferences of knowledge and intent from her denials. United States v. Peyton (9 Cir. 1971), 454 F.2d 213 (per curiam). Her testimony and her claim of lack of guilt may be, and was, disbelieved by the jury and the contrary, her guilt, may be and was inferred. United States v. Cisneros (9 Cir. 1971). 448 F.2d 298, 305–306.

Counsel for Nena Castro was faced with problems of trial strategy as to (1) whether he should call her as a witness in her defense, and (2) whether he should question her about her involvement in the conspiracy, Count 1, or only about her involvement in the matters charged in Counts 4, 5, 11 and 12. Counsel's argument at our bench, but not in his brief, that in some way appellant Nena Castro was prejudiced, has no merit.

The judgment as to Nena Castro is affirmed.

### III.

### *The admission of evidence of a similar prior conspiracy*

Both appellants contend that the trial court erred in admitting evidence concerning a prior similar conspiracy.

■ Evidence of a prior similar act is admissible on the issues of a defendant's intent, knowledge, *modus operandi*, preparations and plan, and absence of any mistake in his acts. Stewart v. United States (9 Cir. 1962), 311 F.2d 109, 112 (common scheme, purpose, guilty knowledge, intent, motive); Fernandez v. United States (9 Cir. 1964), 329 F.2d 899, 908, cert. den., 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 *(modus operandi);* United States v. Jones (9 Cir. 1970), 425 F.2d 1048, 1051, cert. den., 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed. 2d 51 (absence of mistake, opportunity, intent, plan, knowledge); United States v. Rodriguez (9 Cir. 1972), 459 F.2d 983, 984, cert. den., 409 U.S. 865, 93 S. Ct. 158, 34 L.Ed.2d 113 (intent, motive, method of dealing).

Appellants rely on United States v. Fierson (7 Cir. 1969), 419 F.2d 1020, and Hamilton v. United States (5 Cir. 1969), 409 F.2d 928. These cases have not been followed in the Ninth Circuit. In *Fierson* the defendant, found guilty of falsely representing himself as an FBI agent, admitted he repossessed a car but denied he represented himself to be an FBI agent. A similar prior act of repossession and representation that he was such an agent, was proved. In our circuit it would probably have been admissible as proof of a plan or scheme. In *Hamilton* the charge was selling moonshine whiskey in violation of 26 U. S.C. § 5205(a)(2). Intent was not an ingredient of the charge. *Id.,* 409 F.2d at 930. Proof of a prior offense on the issue of intent was clearly error.

■ Appellants urge that there was no issue of intent, plan or scheme but solely the question—were documents exchanged and money received by appellants? However, from the beginning of the trial, counsel for appellants injected into the case the thrust of one part of the defense—that the immigration operation at San Ysidro was so loosely run and slipshod that allegations of misconduct could be made against anyone.

On cross-examination of the Government's first witness, counsel for appellants began laying out this defense.

Questions brought out testimony that there were no written instructions regarding issuance of documents; the issuance of documents was largely discretionary; there were no mandatory questions regarding the issuance of documents; it was not unusual to ask for an individual inspector; more persons asked for Mr. Castro than other inspectors because he was Mexican-American and had many friends in Mexico; the greater portion of the inspector's work is discretionary; that documents for aliens were issued at a place other than the immigration office; and the issuance of the SW–434 [1] is completely discretionary.

When appellant Frank Paul Castro testified in his defense he stated that documents could be issued at the discretion of the interviewing officer; and there were no specific instructions for the issuance of temporary border crossing cards nor instructions as to who was required to complete certain forms. Thus one part of the defense presented, opened up the issues of intent, knowledge, mistake and plan or scheme.

The plan as charged in the indictment was generally identical to the prior similar act.[2] In both instances, it was the same group of people from the south or interior of Mexico, possessing Mexican Form 13 and the U.S. Public Health X-

---

[1.] An SW–434 is an immigration permit which, when accompanied by a border crossing card (I–186) or temporary border crossing card (I–190) allows the bearer to travel within the United States more than twenty-five miles from the border.

[2.] (1) *The Operation of the Prior Similar Conspiracy.*

Isabel Carrasco met Frank Paul Castro in 1966. They became good friends. In 1967, he first talked to Castro about the sale of immigration documents and then began to locate Mexican citizens as customers and take them to Castro.

Isabel Carrasco testified to the operation of the prior similar conspiracy. He was to gather persons from the south or interior of Mexico. After these people had obtained the Mexican Form 13 and the U.S. Public Health X-ray Card, they were brought to appellant Frank Paul Castro at the Immigration office by Isabel Carrasco. Appellant Frank Paul Castro would then issue the I–190 (temporary border crossing card). Eventually, because so many persons were brought to the office, appellant Frank Paul Castro told Isabel Carrasco not to accompany the customers. Payment and all discussions regarding the sale of permits took place at appellant Frank Paul Castro's house.

In 1969, Isabel Carrasco began selling SW–434s issued by appellant Frank Paul Castro. The procedure was to obtain the I–186 (border crossing card) and bring it into the United States to appellant Frank Paul Castro's house. Isabel Carrasco and appellant Frank Paul Castro would enter the bedroom where Isabel Carrasco would observe Frank Paul Cas-

tro make out the SW–434. The charge for this permit was $30.

(2) *The Operation of the Conspiracy Presented to the Jury.*

Ezequiel Castrellon was a brother-in-law of Isabel Carrasco, and in June or July 1969 he began to refer customers to Carrasco, and then take the customers into Castro's office while Carrasco waited outside. About September 1969, Castro told Carrasco, "not to call any more, . . . the thing was getting hot, . . . to go away from Tijuana."

Castrellon then took over, although beginning in April 1969, Carrasco was again working through one Chino, who operated both in the first conspiracy and the second.

Castrellon testified to a series of conversations with Nena Castro in December 1969. The Government treated this as the beginning of the conspiracy charged.

The evidence showed that Ezequiel Castrellon would find persons from the interior of Mexico, ascertain that they had obtained the Mexican Form 13 and the U.S. Public Health X-ray Card. He would take these persons to appellant Frank Paul Castro, who would issue the I–190. The customers thereafter paid Ezequiel Castrellon. Castrellon would then take the money to appellant Frank Paul Castro's house and pay him. Later, when Ezequiel Castrellon began bringing too many people to the office, appellant Frank Paul Castro told Ezequiel Castrellon not to come to the office.

In regard to the sale of SW–434s, Ezequiel Castrellon began also by taking customers to the office. When this became obvious, appellant Frank Paul Castro

ray Card, who were issued an I–190 for a fee. In both cases, the SW–434s were issued only to those persons possessing an I–186. They were issued at appellant Frank Paul Castro's house and the charge in both cases was $30. Carrasco was the runner in the earlier conspiracy and Castrellon took over, in the conspiracy charged, when Carrasco terminated his activities. The questioned proof obviously bore on the issues of intent, guilty knowledge, plan, scheme, and *modus operandi*.

It could have been contended that there was only one conspiracy with two successive runners. The indictment stated the conspiracy began at a date unknown to the Grand Jury. Since the evidence of the prior conspiracy went to the jury with instructions limiting the use of the evidence, the appellants were benefitted, since otherwise that evidence could have been considered as proof of *one* conspiracy without the limiting instructions.

■ Appellants assert that proof of prior similar acts were also offered in rebuttal. Actually, when Frank Paul Castro tendered himself as a witness and testified, he opened the door for impeachment testimony. This testimony, which, if offered in chief by the Government, might have been testimony as to prior similar acts, became instead impeaching testimony, properly admitted. White v. United States (9 Cir. 1963), 317 F.2d 231, 233.

The judgments of conviction are affirmed as to each appellant. Bail of each appellant is revoked now.

The motion to reopen argument, filed March 26, 1973, is denied.

had Ezequiel Castrellon assemble the I–186 (border crossing card), which Ezequiel Castrellon would then bring to appellant Frank Paul Castro's house. At the house, appellant Frank Paul Castro and Ezequiel Castrellon would enter Castro's bedroom. Here Ezequiel Castrellon would give appellant Frank Paul Castro the I–186 and Castro would go into the bathroom, emerging with the SW–434 to accompany the I–186. The charge for this permit was $30 and was paid the same day or the day after.