UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

# FILED

MAY 01 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CYNTHIA BOWLES and ANTONIO SOUSA,

                    Plaintiffs - Appellants,

  v.

CITY OF PORTERVILLE; et al.,

                    Defendants - Appellees.

No. 12-16467

D.C. No. 1:10-cv-00937-LJO-GSA
Eastern District of California,
Fresno

ORDER

Before: CALLAHAN and M. SMITH, Circuit Judges, and KORMAN, Senior District Judge.[*]

        The dissent filed on April 24, 2014, is hereby amended.

---

        [*]     The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CYNTHIA BOWLES and ANTONIO SOUSA,<br><br>                    Plaintiffs - Appellants,<br><br>  v.<br><br>CITY OF PORTERVILLE; et al.,<br><br>                  Defendants - Appellees. | No. 12-16467<br><br>D.C. No. 1:10-cv-00937-LJO-GSA<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted February 14, 2014
San Francisco, California

Before: CALLAHAN and M. SMITH, Circuit Judges, and KORMAN, Senior District Judge.[**]

This case arises out of a tragic mistake. Joseph Bowles ("Bowles") was shot

and killed by California Highway Patrol Officer Chris McGuire ("McGuire")

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

when, while being pursued on foot, Bowles pivoted and allegedly pointed a metallic object at McGuire. The officer fired a single shot that killed Bowles. Bowles' parents, Cynthia Bowles and Antonio Sousa ("Plaintiffs"), filed this action pursuant to 42 U.S.C. § 1983 alleging an unreasonable search and seizure, excessive force, and other claims. The district court granted summary judgment to Officer McGuire and the other defendants on the basis of qualified immunity, finding that McGuire's use of deadly force was objectively reasonable under the circumstances. Plaintiffs appeal. We affirm because the totality of the circumstances confirms that McGuire reasonably feared that Bowles was about to shoot him.[1]

We review "de novo a grant of summary judgment on the basis of qualified immunity," and in "determining whether summary judgment is appropriate, [view] the evidence in the light most favorable to the non-moving party." *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011); *see also Elder v. Holloway*, 510 U.S. 510, 516 (1994).

In *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc), we explained that qualified immunity shields an officer from liability even if his or her action

---

[1] Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our decision.

2

resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," and that the "purpose of qualified immunity is to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (internal quotation marks and citations omitted). *See also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) ("[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks and citations omitted).

In determining whether an officer is entitled to qualified immunity, we consider: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[T]he courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. In *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), the Supreme Court further defined when a right is clearly established.

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

*See also Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc).

The Supreme Court has noted that because "qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231. As we recognized in *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994), there is some tension between an early determination of qualified immunity and the rule that summary judgment is improper where there are disputed issues of material fact. In *Scott*, we held that:

> The judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts.

*Id*. at 915. We further noted "[a]ll determinations of unreasonable force 'must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id*. at 914 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

4

It is well established that an officer may not shoot a fleeing suspect unless he poses a serious threat to the officer. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). Thus, the pivotal issue is whether McGuire, or an officer in McGuire's position, would reasonably fear that Bowles was going to shoot him. Reviewing the totality of the circumstances, we agree with the district court that Bowles' fear was reasonable.

Plaintiffs do not question McGuire's subjective fear. Nor do they appear to question that Bowles stopped a second time and pivoted to face the officer. In addition, Plaintiffs do not deny that a cologne bottle found at the scene had a metallic and cylindrical top. Instead, they argue that a jury could conclude that Bowles did not have a cologne bottle in his hand. But the evidence shows that Bowles was responsible for the presence of the cologne bottle. When Bowles was running the officers had seen bulges in his pockets, and a search of Bowles after he was shot revealed at least one more cologne bottle. Plaintiffs' allegations that McGuire improperly moved the cologne bottle do not create a material issue of fact because they do refute that Bowles had been carrying the cologne bottles.

Similarly, Plaintiffs' argument that Bowles may have been crouching when he was shot does not raise a material issue of fact. It is pure speculation to suggest that Bowles was attempting to lie down as previously ordered by the officers.

5

Bowles had previously ignored the officers' commands and more importantly, there is no suggestion that crouching was inconsistent with preparing to fire a gun.

Furthermore, McGuire fired a single shot. This distinguishes the situation from instances in which the officers continued firing after avoiding the immediate threat. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Perrin v. Gentner*, 177 F. Supp. 2d 1115, 1120-21 (D. Nev. 2001).

Given Bowles' fleeing, the darkness, the officers' prior restraint, and the presence of a cologne bottle with a metallic cylindrical top, there is no other possible reason for McGuire's fear that Bowles was about to shoot him. While one might speculate as to other causes for McGuire's real but mistaken fear, Plaintiffs have not pointed to any evidence that might support such speculation.[2] McGuire was required to make a "split second judgment" in a situation that was "tense, uncertain, and rapidly evolving." *See Graham*, 490 U.S. at 397. His testimony is "internally consistent and consistent with other known facts." *See Scott*, 39 F.3d at 915. Accordingly, the district court properly concluded that McGuire's

---

[2] At oral argument, counsel asserted that the officers had not seen Bowles reach into his pocket. However, at his deposition McGuire stated that "based on the movement of his arms and elbows, it appeared that he was getting something either from his pocket or waistband."

6

apprehension was reasonable.  The district court's grant of summary judgment is

**AFFIRMED**.

*(Bowels et al v City of Porterville et al ) Amended 12-16467*

KORMAN, District Judge, dissenting:

Joseph Bowles ("Bowles") was shot and killed by California Highway Patrol Officer Chris McGuire ("Officer McGuire") in the early morning hours of October 20, 2009. The shooting came at the culmination of a chase that began after Officer McGuire observed Bowles "looking into vehicles, placing his hands kind of over his eyes to, to allow him to look inside of the vehicles[.]" ER 426. Although Officer McGuire did not see Bowles make any contact with any of those vehicles with his hands, Officer McGuire testified that he "just had reasonable suspicion that he was attempting to commit a crime based on the several minutes of surveillance we had with him up to that point[.]" ER 426-27. After Officer McGuire's colleague, Officer McCord, approached Bowles and identified himself as a police officer, Bowles ran and the chase began with Officers McGuire and McCord in pursuit. ER 369-60. Officer McCord eventually dropped back and did not witness Office McGuire fire the shot that killed Bowles.

These events were ultimately followed by a complaint filed by Bowles's parents, pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that the use of deadly force against their son constituted an unreasonable search and seizure. The complaint was based on the holding of the Supreme Court in *Tennessee v. Garner* that a "police officer may not seize an unarmed, nondangerous suspect by shooting him dead." 471

1

U.S. 1, 11 (1985). Nevertheless, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* 11-12.

Under the holding in *Tennessee v. Garner*, it was a violation of the Fourth Amendment for Officer McGuire to use deadly force to apprehend Bowles. Officer McGuire, however, has asserted the affirmative defense of qualified immunity based on his claim that he feared that Bowles was going to shoot him. The district court granted McGuire's motion for summary judgment. On this appeal, after holding that "the pivotal issue is whether McGuire, or an officer in McGuire's position, would reasonably fear that Bowles was going to shoot him," *See* Majority at 5, the majority concludes that Officer McGuire's fear that he was in danger of being shot was reasonable and that the evidence is insufficient as a matter of law for a jury to conclude otherwise.

I am unable to agree that this case is appropriate for summary judgment. In my view, the majority unjustifiably fails to apply the applicable legal standards for a motion for summary judgment in a case in which the victim of a shooting by a police

2

officer is dead and the entire case rests largely on the deposition testimony of the defendant. Moreover, while the majority bases its holding on its review of "the totality of the circumstances," my view of those circumstances leads me to conclude that this case is one that must be resolved by a jury. I turn first to the applicable legal standards, and then to a careful analysis of the underlying facts.

(I)

Because the majority resolves the pivotal issue in this case solely by crediting the testimony of Officer McGuire, it is useful to begin with the admonition that where a motion for summary judgment is based on such testimony, a district judge "must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (internal citations omitted). The district judge "may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *Id.* This is a corollary of two well settled principles. First, "[i]t is clear that qualified immunity is an affirmative defense, and we think it equally clear that the burden of proving the defense lies with the official asserting it." *Benigni v. City of Hemet*, 879 F.2d 473, 479 (9th Cir. 1988). Second, this consideration aside, "the ordinary rule, based on considerations of

3

fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Campbell v. U.S.*, 365 U.S. 85, 96 (1961); *see also U.S. v. Fior D'Italia, Inc.*, 536 U.S. 238, 257 n.4 (2002); *Nealey v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1280-81 (9th Cir. 1980); *Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 538 (D.C.Cir. 1975).

As a separate, related principle, Professors Wright, Miller, and Kane observe, "[t]he party opposing summary judgment does not have a duty to present evidence in opposition to a motion under Rule 56 in . . . circumstances . . . when there is an issue as to the credibility of the movant's evidentiary material." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 480, 485 (3d ed.1998).

> Thus if the proof in support of the motion is largely documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden. . . . If the moving party's proof is less convincing, as in cases where he relies on his own testimony or has exclusive knowledge of the transaction, the burden of providing evidence may never shift to the opponent.

John A. Bauman, *A Rationale of Summary Judgment*, 33 Ind. L.J. 467, 483–84 (1958) (alteration in original) (quoted in Wright, Miller & Kane, *supra*, at 486). As Judge Frank observed in one of the leading cases on this issue, where "the facts asserted by movant are peculiarly within the knowledge of the movant, then the opponent must

4

be given the opportunity to disprove that fact by cross-examination and by the demeanor of the movant while testifying." *Subin v. Goldsmith*, 224 F.2d 753, 760 (2d Cir. 1955); *see also Ala. Great S. R.R. Co. v. Louisville & Nashville R.R. Co.*, 224 F.2d 1, 5 (5th Cir. 1955) (describing *Subin* as "a thorough going exposition of why a summary judgment should, and should not, be granted"); Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.").

These principles reflect the long-recognized prerogative of the jury to disbelieve the testimony of a party and conclude that the opposite of his testimony is true. "[A] trier of fact is not compelled to accept and believe the self serving stories of vitally interested defendants. Their evidence may not only be disbelieved, but from the totality of the circumstances, including the manner in which they testify, a contrary conclusion may be properly drawn." *United States v. Cisneros*, 448 F.2d 298, 306 (9th Cir. 1971). Indeed, the Supreme Court has recognized the "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)); *see also United States v. Selby*, 557 F.3d 968, 976 (9th Cir. 2009) ("[D]isbelief of a defendant's own testimony may provide at least a partial basis for

5

a jury's conclusion that the opposite of the testimony is the truth.") (internal quotations omitted); *United States v. Chase*, 503 F.2d 571, 573 (9th Cir. 1974) ("where, for example, a witness' story is implausible- disbelief of testimony on a certain point can support the truth of what the witness denies."); *id.* (Wallace, J., concurring) ("Whether the testimony of a defendant or any other witness has a ring of genuineness or not often becomes most significant in finding where the truth lies.")

(II)

Against this legal backdrop, the holding of the majority that summary judgment is appropriate in this case is impossible to justify. Office McGuire bore the burden of proof. The facts relating to the shooting were peculiarly within his knowledge and the jury was not compelled to accept and believe his self-serving testimony that is implausible on its face. Officer McGuire testified that, during the course of the chase, Bowles stopped twice. When he stopped the first time and faced Officer McGuire, the latter ordered him to get on the ground. ER 421. At that moment, when they were approximately five feet apart, Officer McGuire "could just tell that [Bowles] had items in both of his front pockets, but [he] did not know what these items were." ER 421. Officer McGuire then drew his weapon and again ordered Bowles to get to the ground. ER 415. The chase resumed when "shortly after that Mr. Bowles started running away again." ER 412.

According to Officer McGuire, it was at this point when Bowles stopped and

6

turned that he saw "a metallic cylinder object in his hands," which led Officer McGuire to believe that Bowles had a weapon. ER 413. When asked how the object was positioned in Bowles's hands, Officer McGuire answered that "[h]e had his, both his left and right hand coupled together extended out in front of him, with his elbow slightly bent, and the metallic object was protruding from within his hands as he had them cupped together." ER 414. The object which Officer McGuire testified he saw in Bowles's hands, and which led to the shot that killed him, was a cologne bottle. In order to credit Officer McGuire's testimony, a jury would have to believe that after stopping, Bowles removed a cologne bottle from one of his front pockets and pointed it at a police officer who had his gun drawn and was no more than ten feet away. While the majority has apparently seen fit to credit this improbable tale, a jury could decide otherwise.

I recognize that there is a phenomenon known as "suicide by cop," a term which has been defined in different ways and which could explain such otherwise inexplicable behavior by the victim. The American College of Emergency Physicians defines it as "an incident where a suicidal individual intentionally engages in life-threatening and criminal behavior with a lethal weapon [or what appears to be such a weapon] toward law enforcement officers or civilians specifically to provoke officers to shoot the suicidal individual in self-defense or to protect civilians." H. Range Huston, M.D., et al., *Suicide by Cop*, 32 Annals of Emergency Med. 6 (1998)

7

(quoted in Anthony J. Pinizzotto et al., *Suicide by Cop: Defining a Devastating Dilemma*, 74 FBI L. Enforcement Bull. 2, 9 (2005)). In *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009), we upheld the admissibility of expert testimony regarding "suicide by cop" in the context of that particular case. No evidence of this kind was offered in support of the defendants' motion for summary judgment. Nor was any evidence offered of the kind necessary to show that Bowles was a "suicidal individual." *See* Pinizzotto et al., *supra*, at 12-14.

More significantly, there is other compelling circumstantial evidence that calls into question Officer McGuire's version of the events, and from which a jury could reasonably conclude that Bowles was shot when he was already moving down towards the ground. Bowles was taller than Officer McGuire, ER 110, and Officer McGuire testified that Bowles was standing on a sidewalk that was elevated above Officer McGuire's position on the parking lot at the time of the shooting. ER 450. Nevertheless, Jesse Worbock, Ph.D, a forensic biomechanics expert, offered the opinion, in the form of an affidavit, that the bullet that entered Bowles's body did so at a downward trajectory. This indicated to Dr. Worbock that "Bowles was not standing erect at the time he was shot. Instead, Mr. Bowles's body was already down, or moving down toward the ground when he was shot." ER 110; *see also* ER 111 ("it is my expert opinion that the incident did not occur in the manner described by Officer McGuire to the extent that Bowles was not standing at the moment he was shot, based

8

on the downward trajectory of the bullet, and was likely falling down or kneeling.").

This expert opinion contradicts Officer McGuire's uncorroborated testimony that Bowles had stopped and had just begun to spin to his left with his arms extended when he was shot. ER 413-14. *Cf. Ting v. U.S.*, 927 F.2d 1504, 1510 (9th Cir. 1991) (genuine issues of material fact existed regarding circumstances of the shooting based on testimony of ballistics expert).

Nevertheless and quite remarkably, the only answer the majority offers for this competent and otherwise uncontroverted expert opinion is that "[i]t is pure speculation to suggest that Bowles was attempting to lie down as previously ordered by the officers." *See* Majority at 5. And, even if Bowles was in a crouching position when he was shot, "there is no suggestion that crouching was inconsistent with preparing to fire a gun." *Id.* But, as I have observed above, if Bowles was crouching when he was shot, then it totally undermines Officer McGuire's narrative of how the shooting occurred.

This is not the only circumstantial evidence that a jury could conclude undermines Officer McGuire's testimony. Office McGuire testified that, "[a]fter the first shot was fired, [Bowles] immediately, as he was spinning, threw his hands up in the air, and the [cologne] bottle flew from his hands, it went up into the air, and then landed in the dirt next to him." ER 430-31. The dirt was in a flowerbed alongside the place where Bowles had been standing. ER 431. Officer McGuire admitted that he

picked up the cologne bottle without wearing gloves and placed it near Bowles's left hand. ER 295, 431-32, 435, 447. In doing so, he acted contrary to the policy of the Police Department of the City of Porterville by not leaving physical evidence in place and using gloves to avoid contaminating evidence with fingerprints. ER 235-36, 260, 380. While Office McGuire testified that he moved the cologne bottle because he "didn't want the item to be lost or misplaced, or somebody not to know what it was," ER 431-32, plaintiffs suggest that he threw the cologne bottle into the flowerbed, retrieved it, and placed it next to Bowles to explain the fingerprints he left on the bottle while removing it from Bowles's pockets. Indeed, at one point in his testimony, Officer McGuire admitted that after he initially picked up the cologne bottle he threw it further into the flowerbed and then picked it up again after he finished searching Bowles. ER 435. The majority observes that "the evidence shows that Bowles was responsible for the presence of the cologne bottle." *See* Majority at 5. Plaintiffs, however, do not argue that Bowles had not been carrying two cologne bottles. Rather, they argue that the cologne bottles were in Bowles's pockets at the time of the shooting. This is the basic issue that the jury should be free to resolve on this record.

The only legal reason the majority suggests for arguing otherwise is that "[t]here is some tension between an early determination of qualified immunity and the rule that summary judgment is improper where there are disputed issues of material fact." *See* Majority at 4. Nevertheless, even if true, the majority cites no case that

10

justifies altering the rules that ordinarily govern the determination of motions for summary judgment. These rules, which are discussed at length earlier, are based on the premise that summary judgment should not be granted in a case such as this because "a trier of fact is not compelled to accept and believe the self serving stories of vitally interested defendants." *United States v. Cisneros*, 448 F.2d 298, 306 (9th Cir. 1971). Particularly where, as here, Officer McGuire's story is "implausible," *United States v. Chase*, 503 F.2d 571, 573 (9th Cir. 1974), not to speak of the other evidence that established that the shooting could not have happened as he testified, the jury can conclude that "the opposite of the testimony is the truth." *United States v. Selby*, 557 F.3d 968, 976 (9th Cir. 2009). Under these circumstances, summary judgment is inappropriate even in a case that involves the affirmative defense of qualified immunity.

The only concession the Supreme Court has made to the normal rules that apply in such cases is that it permits an appeal solely from an order denying qualified immunity on purely legal grounds. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). An appeal would not lie from a denial of summary judgment based on a determination by a trial judge that there is an issue of fact for the jury to resolve on the issue of qualified immunity even though that would force a law enforcement officer to go to trial. *Johnson v. Jones*, 515 U.S. 304, 317 (1995); *Ram v. Rubin*, 118 F.3d 1306 (9th Cir. 1997). Indeed, in the present case, concern about "an early determination of

11

qualified immunity," *see* Majority at 4, did not prevent full pretrial discovery that included taking the deposition of Office McGuire. Moreover, as I have demonstrated, this case is hardly an appropriate one for creating an unsupported and unjustified exception to the normal rules that govern the consideration of a motion for summary judgment. If Officer McGuire should prevail on a defense of qualified immunity, then that judgment must be made by a jury.

I conclude with where I began, with the words from *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994). In a case such as this, "the court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *Id.* at 915 (internal citations omitted). I dissent because, unlike the majority, I believe that the evidence in this case could convince a rational factfinder that the officer acted unreasonably.